UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEKAH DU BOIS,<br><br>   Plaintiff,<br><br> v.<br><br>ANTHONY BOSKOVICH, et al.,<br><br>   Defendants. | Case No. 21-cv-03224-HSG<br><br>**ORDER GRANTING MOTION TO STRIKE, GRANTING MOTION TO DISMISS, AND TERMINATING AS MOOT MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 27, 40, 41 |

  Pending before the Court are Defendants' motion to strike and motions to dismiss. Dkt. Nos. 27, 40, 41. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion to strike, **TERMINATES AS MOOT** Anthony Boskovich's motion to dismiss, and **GRANTS** Gary Stratton's motion to dismiss.

**I. BACKGROUND**

  Pro Se Plaintiff Bekah Du Bois filed this action for fraud and negligent misrepresentation against both her ex-husband, Defendant Gary Stratton, and her ex-husband's attorney, Defendant Anthony Boskovich. *See* Dkt. No. 20 ("SAC"). Plaintiff's claims arise from an underlying marital dissolution proceeding in April 2016, in which Mr. Boskovich represented Mr. Stratton. *Id.* According to the complaint, Plaintiff and Mr. Stratton entered into an agreement to waive spousal support as part of this proceeding. *See id.* at ¶¶ 8–11. As part of this agreement, Plaintiff also agreed to extend the limitations period to try a concurrent malicious prosecution matter involving the same parties. *See id.* at ¶ 10. The waiver of spousal support was filed in family court in July 2016. *See id.* at ¶ 11.

  However, Plaintiff contends that at the time, both Defendants failed to tell her that Mr.

1    Stratton had remarried months before in October 2015. *Id.* at ¶¶ 8, 12. Plaintiff also contends that
2    Defendants misstated the nature of Mr. Stratton's finances. *See id.* at ¶ 8. Plaintiff urges that
3    Defendants had a fiduciary duty to tell her this information, and she would not have agreed to
4    waive spousal support had she known the truth. *Id.* at ¶¶ 12, 18–21, 27. Plaintiff also suggests
5    that Mr. Stratton could not legally waive spousal support because he had remarried. *See id.* at
6    ¶¶ 12, 20. Plaintiff alleges that in May 2017 she discovered that Mr. Stratton had remarried back
7    in 2015. *Id.* She also asserts that her own attorney, Elainie Honjas, testified during a deposition in
8    May 2020 that Mr. Boskovich knew Mr. Stratton had remarried prior to executing the waiver of
9    spousal support. *See id.* at ¶ 13.

In response to the SAC, Mr. Boskovich filed a motion to strike and both Defendants filed motions to dismiss. Dkt. Nos. 27, 40, 41.

## II.   MOTION TO STRIKE

### A.   Legal Standard

Under California's anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. P. Code § 425.16(b)(1). The statute was enacted to curtail "strategic lawsuits against public participation," that were "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." *Id.* § 425.16(a). Because "it is in the public interest to encourage continued participation in matters of public significance, and [because] this participation should not be chilled through abuse of the judicial process," the anti-SLAPP statute is to be construed broadly. *Id.*

California courts apply a two-step process for analyzing an anti-SLAPP motion. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010). Under the first prong, the moving party must make "a threshold showing . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the right of petition or free speech under the United States or California

2

1 Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v.*
2 *Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002) (quoting Cal. Civ. P. Code § 425.16(b)(1)).
3 If the moving party meets its threshold showing, then the burden shifts to the non-moving party to
4 prove a probability of prevailing on the claim. *See id.*

**B.  Discussion**

As noted above, to be subject to an anti-SLAPP motion, the cause of action must arise from an act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. P. Code § 425.16(b). Subdivision (e) delineates the four types of acts that constitute a protected "act in furtherance of a person's right of petition or free speech." *Id.* at § 425.16(e). These include, as relevant here, "(1) any written or oral statement or writing made before a . . . judicial proceeding," and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." *Id.* at § 425(e)(1), (2). The statute "shall be construed broadly" to safeguard "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Id.* at § 425.16(a).

**i.  Arising from Protected Activity**

For purposes of the anti-SLAPP statute, a cause of action "arises from" conduct that it is "based on." *See Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal. App. 4th 1237, 1244–45 (Cal. Ct. App. 2013). Plaintiff brings causes of action against Mr. Boskovich for (1) intentional misrepresentation and nondisclosure; and (2) negligent misrepresentation and nondisclosure. *See* SAC at ¶¶ 17–33. Mr. Boskovich states that these causes of action all arise from his representation of Mr. Stratton in the underlying marital dissolution proceeding and are thus protected. *See* Dkt. No. 40 at 6–7.

Courts routinely hold that the anti-SLAPP statute "protects lawyers sued for litigation-related speech and activity." *See Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 154 (Cal. Ct. App. 2012), *as modified* (June 22, 2012) (collecting cases). "Recognized petitioning activities [] include not only the conduct of litigation but also acts and communications reasonably incident to litigation . . . ." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1025 (Cal. 2021).

3

1  The California Court of Appeal has thus explained that "all communicative acts performed by
2  attorneys as part of their representation of a client in a judicial proceeding or other petitioning
3  context are per se protected as petitioning activity by the anti-SLAPP statute." *Cabral v. Martins*,
4  177 Cal. App. 4th 471, 480 (Cal. Ct. App. 2009) (collecting cases).
5      Here, the complaint itself alleges that Mr. Boskovich's alleged misconduct occurred as part
6  of the family court case, *Stratton v. Stratton Family Case*, Case No. 6-09-FL-002093. *See* SAC at
7  ¶¶ 8–11, 33. Mr. Boskovich assisted Mr. Stratton in negotiating the agreement to waive spousal
8  support, which was filed in the family court. *See id.* at ¶ 11. The complaint also indicates that Mr.
9  Boskovich was "the Attorney of record for Stratton" for these proceedings. *See id.* at ¶¶ 18–19.
10  Mr. Boskovich urges that Plaintiff's causes of action thus clearly arise from his written and oral
11  statements "made in connection with an issue under consideration or review by . . . a judicial
12  body." Cal. Civ. P. Code § 425.16(e)(2); *see also Bleavins v. Demarest*, 196 Cal. App. 4th 1533,
13  1541–42 (Cal. Ct. App. 2011) (concluding that challenge to opposing counsel's "approach to
14  litigation" was protected activity under the anti-SLAPP statute).
15      In response, Plaintiff suggests that the anti-SLAPP statute should not apply because she is
16  suing Defendants for their *omissions* rather than their affirmative speech. *See* Dkt. No. 51 at 1–2.
17  But as an initial matter, Plaintiff's allegations are not purely about Mr. Boskovich's omissions.
18  Plaintiff alleges, for example, that Mr. Boskovich "often told Plaintiff and Plaintiff's attorney
19  Elainie Honjas that Mr. Stratton was not employed and had no income," which she states "was not
20  true." *See* SAC at ¶ 8; *see also id* at ¶¶ 17–33 (asserting causes of action for intentional and
21  negligent *misrepresentation*). Because both Plaintiff's causes of action are based, at least in part
22  on these affirmative misrepresentations about Mr. Stratton's financial circumstances, the anti-
23  SLAPP statute applies. *See Bonni*, 11 Cal. 5th at 1009–12 ("It does not matter that other
24  unprotected acts may also have been alleged within what has been labeled a single cause of action;
25  these are disregarded at this stage." (quotation omitted)).
26      In any event, the anti-SLAPP statute is not strictly limited to affirmative
27  misrepresentations. As the California Court of Appeal has explained, the free speech right that the
28  anti-SLAPP statute is designed to protect "encompasses what a speaker chooses to say, and what a

United States District Court
Northern District of California

4

speaker chooses not to say; it is a right to speak freely and also a right to refrain from doing so at all." *Suarez v. Trigg Lab'ys, Inc.*, 3 Cal. App. 5th 118, 124 (Cal. Ct. App. 2016). The Ninth Circuit's opinion in *Graham-Sult v. Clainos* is instructive. 756 F.3d 724, 739–40 (9th Cir. 2014). Much like the allegations here, in *Graham-Sult*, the plaintiffs alleged that the trustee of an estate and his attorney failed to disclose information about the intellectual property assets of the estate while a probate court was considering how the estate's assets should be distributed. *Id.* The Court held that the fraud and concealment claims still arose from protected activity for purposes of the anti-SLAPP statute. *Id.* The Ninth Circuit held that "it ma[de] no difference that Plaintiffs include[d] allegations of omissions, rather than only affirmative misrepresentations" because such claims still arose from protected activity. *Id.*; *cf. Bonni*, 11 Cal. 5th at 1025 (noting that alleging fraud during the course of settlement negotiations "does not remove [the negotiations] from the definition of protected activity"); *Navellier v. Sletten*, 29 Cal. 4th 82, 90 (Cal. 2002) (finding alleged "acts (or omissions) . . . fall[] squarely within the plain language of the anti-SLAPP statute").

Here too, the Court finds that Plaintiff's claims against Mr. Boskovich arise from protected activity because they are based on his negotiations of the waiver of spousal support as counsel for Mr. Stratton in the family court case. To the extent Plaintiff suggests that the anti-SLAPP statute somehow insulates Defendants from the consequences of their wrongful conduct, *See* Dkt. No. 51 at 6, Plaintiff misunderstands the statute. "[T]he statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning," but rather "subjects to potential dismissal only those actions in which the plaintiff cannot state[] and substantiate[] a legally sufficient claim" *Navellier*, 29 Cal. 4th at 93 (quotation omitted). The Court therefore considers Plaintiff's likelihood of success as to her causes of action against Mr. Boskovich.

### ii. Reasonable Probability of Prevailing

Plaintiff bears the burden of establishing a probability of prevailing on her causes of action against Mr. Boskovich. *See Equilon*, 29 Cal. 4th at 67. But she cannot do so here. Mr. Boskovich contends that Plaintiff's causes of action are barred by California's litigation privilege, Cal. Civ. Code § 47(b), and the statute of limitations. *See* Dkt. No. 40 at 8–10. The Court agrees.

5

California's litigation privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Graham-Sult*, 738 F.3d at 1147 (quotations omitted). The privilege is broad and "extends to statements made outside of judicial proceedings." *Id.* at 1149. It "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." *Id.* at 1147 (quotations omitted). Much like the anti-SLAPP statute, "[t]he litigation privilege also protects a defendant's silence having some relation to a judicial proceeding when the silence is communicative." *See Crossroads Invs., L.P. v. Fed. Nat'l Mortg. Ass'n*, 13 Cal. App. 5th 757, 786 (Cal. Ct. App. 2017). For example, "courts have held the privilege applies when circumstances impose on the defendant a duty to speak and the defendant remains silent, thereby communicating that the circumstances do not exist." *Id.*

*Silberg v. Anderson* is instructive on this point. In that case, the plaintiff sued the attorney who had represented his ex-wife in their marital dissolution proceeding. 50 Cal. 3d 205, 210 (Cal. 1990), *as modified* (Mar. 12, 1990) (en banc). As part of these proceedings, the parties had stipulated to the appointment of a psychologist as an independent expert on visitation and custody arrangements. *Id.* The attorney recommended a psychologist, and said he was neutral. *Id.* But the plaintiff alleged that the attorney failed to disclose that she had a preexisting relationship with the psychologist, which led to a biased report. *Id.* at 210–11. The California Supreme Court held that the litigation privilege "plainly" applied to the attorney's statements and omission because they "were made in the context of a judicial proceeding, were logically related to the action, played an integral role in the proceeding, and were made by one of the participants about an authorized participant." *Id.* at 219–20; *accord Kuehn v. Kuehn*, 85 Cal. App. 4th 824, 834 (Cal. Ct. App. 2000) (applying § 47(b) to fraud claim against attorney for concealment of community assets in marriage dissolution action).

As discussed above, the allegations against Mr. Boskovich are all related to the negotiations regarding the waiver of spousal support in the underlying marital dissolution proceeding in family court. These communications therefore meet all four requirements for

1  § 47(b) to apply: (1) they were made in the context of a judicial proceeding (the marital
2  dissolution action); (2) they were made by an authorized participant (Mr. Stratton's attorney of
3  record); (3) they furthered the objects of the litigation (to resolve issues of spousal support relating
4  to the marriage dissolution); and (4) they were logically related to the action (again, by addressing
5  the scope of any spousal support in the underlying action).
6        In response, Plaintiff suggests that Mr. Boskovich failed to meet his ethical obligations of
7  candor. *See* Dkt. No. 51 at 3–4, 6–7. Plaintiff cites California Rule of Professional Conduct 1.2.1,
8  which states that "[a] lawyer shall not counsel a client to engage, or assist a client in conduct that
9  the lawyer knows is . . . fraudulent." *Id.* But as Mr. Boskovich points out, a violation of a Rule of
10  Professional Conduct does not itself give rise to a cause of action:

> A violation of a rule does not itself give rise to a cause of action for damages caused by failure to comply with the rule. Nothing in these rules or the Comments to the rules is intended to enlarge or to restrict the law regarding the liability of lawyers to others.

15  *See* Cal. Rules of Prof'l Conduct, Rule 1.0(b)(3).
16        Plaintiff's causes of action are also barred by the statute of limitations. Under California
17  Civil Procedure Code § 340.6:

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.

23  Cal. Civ. P. Code § 340.6(a). The limitations period for a cause of action for actual fraud is three
24  years. *See* Cal. Civ. P. Code § 338. The limitations period, however, does not begin to run "until
25  the plaintiff discovers, or has reason to discover, the cause of action." *See Fox v. Ethicon Endo-*
26  *Surgery, Inc.*, 35 Cal. 4th 797, 807 (Cal. 2005).
27        Plaintiff alleges in the complaint that she learned of Mr. Stratton's marital status on May
28  17, 2017. *See* SAC at ¶ 12 ("On or about 5/17/2017, Plaintiff discovered that Stratton had re-

7

married on 10/17/2015."). Under § 340.6, she therefore had to bring her negligent misrepresentation and nondisclosure claim a year later, or by May 17, 2018. But she did not file this action until April 30, 2021. *See* Dkt. No. 1.

As to Plaintiff's fraud-based claim for intentional misrepresentation and nondisclosure, she ordinarily would have had three years from May 17, 2017, or until May 17, 2020, to bring her claim. However, because of the COVID-19 pandemic, the California Judicial Council ("JCC") temporarily tolled the statute of limitations. The JCC's Emergency Rule 9 provides: "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020."[1] As of April 6, 2020, there were 41 days remaining on the three-year statute of limitations.[2] Therefore when the JCC's emergency order ended on October 1, 2020, Plaintiff had 41 more days to file her action—or until November 11, 2020. But again, Plaintiff did not file this action until months later on April 30, 2021. Dkt. No. 1. Therefore, even with tolling due to the COVID-19 pandemic, Plaintiff's causes of action are time-barred.

Plaintiff states in opposition that her claims are nevertheless timely because during a deposition in May 2021, her attorney Ms. Hojas acknowledged that Mr. Boskovich knew Mr. Stratton was married prior to signing the waiver of spousal support. *See* Dkt. No. 51 at 4. To the extent Plaintiff suggests that she did not discover until May 2021 that Mr. Stratton had remarried, this is contradicted by her own allegations in the complaint. *See* SAC at ¶ 12. Accordingly, the Court finds that Plaintiff has failed to demonstrate that there is a probability of prevailing on her causes of action against Mr. Boskovich.

\*   \*   \*

The Court therefore **GRANTS** Mr. Boskovich's motion to strike, Dkt. No. 40, and **DISMISSES** the causes of action against Mr. Boskovich with prejudice. The Court further

---

[1] *See* Judicial Council of Cal., *Emergency Rules Related to COVID-19*, available at https://www.courts.ca.gov/documents/appendix-i.pdf.
[2] A three-year statute of limitations period contains 1,095 days. There are 1,054 days between May 17, 2017, when Plaintiff discovered the misrepresentations, and April 6, 2020, when the tolling under the JCC's order began. 1,095 – 1,054 = 41 days.

**TERMINATES AS MOOT** Mr. Boskovich's motion to dismiss.  Dkt. No. 41.

## III. MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### B. Discussion

Mr. Stratton has also moved to dismiss the claims against him based, at least in part, on the statute of limitations.  Dkt. No. 27.  Like Mr. Boskovich, Mr. Stratton argues that Plaintiff's claims are barred by the three-year statute of limitations under California Civil Procedure Code § 338.  *See id.* at 6.  Plaintiff again suggests that she "was not aware that Defendants conspired to commit fraud" until May 1, 2020, when Ms. Honjas "stated under the penalty of perjury that . . . Defendant Stratton was married before the Mutual Waiver of Spousal Support was agreed upon and executed . . . ." *See* Dkt. No. 30 at 1–2.  But as the Court explained in Section II.B.ii above, Plaintiff's claims are untimely on the face of the complaint.  Plaintiff explicitly alleges in the

complaint that she discovered that Mr. Stratton had remarried in May 2017.  *See* SAC at ¶ 12.  The Court therefore **GRANTS** the motion to dismiss.

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** Mr. Boskovich's motion to strike, Dkt. No. 40; **TERMINATES AS MOOT** Mr. Boskovich's motion to dismiss, Dkt. No. 41; and **GRANTS** Mr. Stratton's motion to dismiss, Dkt. No. 27.  Based on the nature of the deficiencies in Plaintiff's complaint, the Court finds that granting leave to amend would be futile, and therefore **DISMISSES** the case without leave to amend.  *See Ramirez v. Galaz*a, 334 F.3d 850, 860 (9th Cir. 2003) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs.") (quotations omitted).  The Clerk is therefore directed to enter judgment in favor of Defendants and to close the case.

**IT IS SO ORDERED.**

Dated:   2/7/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge